[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, Edward Gilchrist, pursuant to General Statutes §52-466 and article 1, section 8 of the Connecticut constitution, has filed a petition with this court for a writ of habeas corpus. In his petition he claims that he received ineffective assistance of counsel from his trial attorney Frank J. Riccio. For the reasons set forth below, the petition is denied.
CT Page 4846 I.
On June 15, 1989,[1] the petitioner was convicted, following a jury trial, of two counts of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a(a), one count of assault in the first degree in violation of General Statutes §53a-59(a)(1) and two counts of assault in the second degree in violation of General Statutes § 53a-60(a)(1).[2] The petitioner appealed his conviction to the Connecticut Appellate Court which affirmed the conviction. State v. Gilchrist, 24 Conn. App. 624,591 A.2d 131, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991). On November 28, 1989,[3] the petitioner was convicted, following a jury trial, of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a(a), two counts of robbery in the first degree in violation of General Statutes § 53a-134(a) (2) and assault in the second degree in violation of § 53a-60(a) (2). The petitioner appealed his conviction to the Connecticut Appellate Court which affirmed the conviction. State v.Gilchrist, 25 Conn. App. 104, 593 A.2d 507, cert. denied,220 Conn. 905, 593 A.2d 970 (1991). The petitioner was represented at trial in both cases by Attorney Frank Riccio. He was represented on appeal by Attorney Susan Zitzer.
On July 22, 1992, the petitioner filed his petition for habeas corpus[4] based on ineffective assistance of trial counsel.[5] Then, with the assistance of Public Defender Christopher Sheehan, the petitioner, on April 15, 1995, filed a "pro se amended petition".[6] Finally, with the assistance of Public Defender Todd Edgington, the petitioner, on October 1, 1996, filed an amended petition[7] which is before the court today pursuant to State v. Leecan, 198 Conn. 517, 541-42,504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S.Ct. 2922,91 L.Ed.2d 550 (1986) (holding that the proper vehicle for raising an ineffective assistance of counsel claim is by a petition for a writ of habeas corpus); see also State v. Crespo,246 Conn. 665, ___ A.2d ___ (1998).[8]
The petition alleges that Attorney Riccio's assistance fell below the level of a reasonably competent defense attorney in three ways: a) he failed to argue a motion for judgment of acquittal on the two attempted murder counts in file 33,467; b) he failed to file a request to charge on lesser included offenses in file 33,467; and c) he failed to conduct an investigation into medical evidence which would have exculpated the petitioner in file 33,468. CT Page 4847
In connection with Mr. Gilchrist's petition for a writ of habeas corpus, a hearing was held before the court on February 24, 1998, and January 6, 1999. Throughout the course of the hearing several witnesses testified: Dr. Edward Lane, the otolaryngologist who treated the victim Darryl Givens;Transcript, pp. 2-24, Gilchrist (February 24, 1998) (hereinafterTranscript I); Frank J. Riccio, trial counsel for the petitioner Edward Gilchrist, Transcript, pp. 17-127, Gilchrist
(January 6, 1999) (hereinafter Transcript II) and Edward Gilchrist, the petitioner, Transcript II, pp. 128-146.
 II.
In a habeas corpus proceeding the burden of establishing grounds for relief rest with the petitioner. Biggs v. Warden,26 Conn. App. 52, 55, 597 A.2d 839, cert. denied, 221 Conn. 902,600 A.2d 1029 (1991). The proper method for asserting a claim of ineffective assistance of counsel is by way of a motion for a writ of habeas corpus. State v. Leecan, supra, 198 Conn. 541-42;Lozada v. Warden, 223 Conn. 834, 613 A.2d 818 (1992). Connecticut follows the two-pronged test for evaluating the performance of trial counsel found in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Nieves v.Commissioner, 51 Conn. App. 615, ___ A.2d ___ (1999). "[T]he defendant must establish not only that his counsel's performancewas deficient, but that as a result thereof he suffered actualprejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." (Emphasis added.) Id., 620. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable." Fair v.Warden, 211 Conn. 398, 402, 559 A.2d 1094, cert. denied,493 U.S. 981, 110 S.Ct. 512, 108 L.Ed.2d 574 (1989). Stated another way, the "petitioner must make a two-fold showing: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." (Citations omitted.) Valeriano v. Bronson, 209 Conn. 75, 85-86,546 A.2d 1380 (1988); accord Mozell v. Commissioner, 51 Conn. App. 818,820, ___ A.2d ___ (1999). CT Page 4848
"In reviewing the claim, this court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under these circumstances, the challenged action might be considered sound trial strategy. In assessing the petitioner's claim, this court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Internal citations and quotations omitted.) Magnotti v.Meachum, 22 Conn. App. 669, 674-675, 579 A.2d 553 (1990). "[I]t is perfectly consistent for even a lawyer who commits a grievous error — whether due to negligence or ignorance — to be deemed to have provided competent representation." Wainwright v. Sykes,433 U.S. 72, 105, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), cited inValeriano v. Bronson, supra, 209 Conn. 87.
a) Failure to argue for a motion for judgment of acquittal
In count 7(a) of his petition for a writ of habeas corpus the petitioner alleges that "[i]n [docket number] 33,467 Atty. Riccio failed to argue motions for judgment of acquittal, Practice Book § 882 et seq, with respect to the 2 counts of attempted murder. . . ." AMENDED PETITION, p. 2. The testimony at the habeas hearing as well as a review of the trial transcripts indicate quite the opposite. Attorney Riccio twice requested that the trial court grant a motion for judgment of acquittal. SeeTranscript II, pp. 94, 137-139; Trial Transcript I, pp. 349-363, 454[9] In light of these facts, the petitioner cannot allege that counsel's performance was deficient, fulfilling the first prong of Strickland. Because counsel's performance was not deficient it could not have caused the petitioner to suffer actual prejudice, the second prong of Strickland. Thus, the petitioner's first claim of ineffective assistance of counsel must fail.
b) Failure to file a request to charge
In count 7(b) of his petition for a writ of habeas corpus, the petitioner alleges that "[i]n [docket number] 33,467 Atty. Riccio failed to file a request to charge, Practice Book § 851 etseq, that the jury be instructed on lesser included offenses. . . ." AMENDED PETITION, p. 2. On January 6, 1999, the second day of the habeas hearing, Attorney Riccio confirmed that he did not request a charge on lesser included offenses. CT Page 4849Transcript II, pp. 95-96. However, Attorney Riccio's failure to request a charge on lesser included offenses does not, by itself, prove that his performance was deficient. Fair v. Warden, supra,211 Conn. 398; see also Beasley v. Commissioner,47 Conn. App. 253, 262, 704 A.2d 807 (1997).
"A majority of jurisdictions addressing the issue have held that counsel's failure to request a lesser included offense instruction does not necessarily deprive a defendant of reasonably effective assistance of counsel. It may be sound trial strategy not to request a lesser included offense instruction, hoping that the jury will simply return a not guilty verdict."Fair v. Warden, supra, 211 Conn. 404-405.
At the habeas hearing, Attorney Riccio was asked why he had not requested a charge on lesser included offenses in file 33,467. Attorney Riccio explained that in his opinion, "the case was one that was all or nothing at all. It was either a self-defense, which was, the jury was going to see, and hold in favor of Mr. Gilchrist, or was not. There were — there's no question, that there were shots fired, there was no question there were people injured. What we got into was why this occurred and what was the conduct of each of the people, and self-defense — self defense was — made it an all or nothing proposition."Transcript II, p. 96. He explained further: "[A] lesser included in an attempted murder and self-defense are incompatible. You either committed a crime — because self-defense is a justification defense. . . . And if you want a jury to believe that the testimony that they're hearing relates to legitimate self-defense, you don't go clouding up the issue by asking for something less than — or its always a cop-out in front of a jury that you're asking for something less — and many — in this case, it wouldn't apply. . . . I mean, attempted murder, what does it go down to, attempted assault? It's — you know, it doesn't fit. It's not as though you're talking about different degrees of a particular felony." Id., 111. When the court asked Attorney Riccio if he would have requested a lesser included charge if self-defense hadn't been raised, Attorney Riccio responded, "Oh, that's a different — that's a different concept. Of course." Id.
This court concludes that counsel's decision not to request a lesser included offense charge fell within the broad range of reasonably effective assistance of counsel guaranteed by the federal and state constitutions. Counsel testified that his decision not to pursue a lesser included offense charge was an CT Page 4850 effort to preserve the integrity of the petitioner's defense with the jury. Counsel's decision "falls within the range of trial strategy that courts may not second-guess upon collateral attack." Fair v. Warden, supra, 211 Conn. 407. This court, therefore concludes, that the petitioner has failed to demonstrate the deficiency of trial counsel's performance under the first prong of the Strickland test.
Moreover, even if the petitioner had established that Attorney Riccio's performance was deficient he has failed to meet his burden of establishing that he suffered actual prejudice under the second prong of the Strickland test. That prong requires the petitioner to show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra,466 U.S. 687. During the trial of case 33,467 the petitioner took the stand and testified. Trial Transcript I, pp. 370-442. During the course of his testimony the petitioner admitted he shot at the victims. Id., 401-412. Though he claimed to have shot in self-defense; Id.; on cross-examination, the prosecutor confronted the petitioner with the statement he gave police in which he stated "I told them to take everything out of their pockets. I wanted to make sure they didn't have any guns. I was going to shoot them anyhow." Id., 422-423.
"When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt." (Citations omitted.) Fair v. Warden, supra,211 Conn. 408. In light of the fact that the jury was presented with the petitioner's own testimony admitting that he shot the victims as well as a confession that he gave to police, it cannot be said that Attorney Riccio's failure to request a charge on lesser included offenses sufficiently prejudiced the petitioner so as to cast doubt on the reliability of the jury's verdict. The petitioner's second claim of ineffective assistance of counsel must fail.
c) Failure to investigate medical evidence
In count 7(c) of his petition for a writ of habeas corpus, the petitioner alleges that "[i]n [docket number] 33,468 Atty. Riccio failed to conduct an investigation into medical evidence which would exculpate the Petitioner." AMENDED PETITION, p. 2. The evidence adduced at the trial and at the hearing, however, do CT Page 4851 not support the petitioner's claim that there was exculpatory medical evidence.
The petitioner maintained at the habeas hearing that the victim, Darryl Givens, had not in fact been the victim of a shooting and that had Attorney Riccio adequately investigated the medical evidence this fact would have been revealed thereby exculpating him. Transcript I, p. 26 (petitioner: ". . . the teeth wasn't knocked out by a bullet. His teeth was already missing. . . ."); Transcript II, p. 86 (petitioner: "I'm claiming that the fact that the patient — that he wasn't shot.")[10]
Attorney Riccio confirmed, at the hearing, that he had not acquired or seen all of the available medical evidence, including x-rays and CAT scans, in the Darryl Givens case.[11] He also verified the fact that there had been ambiguities in the trial testimony concerning whether or not Darryl Givens had in fact been shot. Darryl Givens himself testified at the trial that he did not realize he was shot when he first arrived at the hospital; rather he told the hospital personnel that he had actually been struck in the face with a gun. Transcript II, pp. 176-78; Petitioner's Exhibit 13 (nurse's progress report of Darryl Givens: "sister insistent that pt. [patient] was shot although pt. states he was struck c [with] a gun.").
Attorney Riccio claimed, however, that the x-rays and CAT scans were not important to the petitioner's defense and that he never had any question that the victim was not shot on the night of September 17, 1987. Transcript II, pp. 113-114. Attacking Lane or the evidence on the bullet wound, would, Attorney Riccio testified, have made him "look like a fool." Id., 118. While Darryl Givens testified that he was initially unaware of the fact that he was shot in the mouth, he further testified that he had come to learn that he was shot in the mouth. Trial Transcript II, pp. 168, 258. Darryl Givens' sister Gwendolyn Givens also testified that her brother had been shot in the mouth and she identified the petitioner as the shooter. Id., pp. 17, 61. Moreover, Lane testified at the trial that as the doctor who treated Darryl Givens, he was sure that Givens had been shot in the mouth.[12] Attorney Riccio did cross-examine the doctor about the bullet injury and although the doctor did not present any reports, x-rays or CAT scans in support of his testimony, he confidently maintained his position that Mr. Givens had been shot and that his previous review of Mr. Givens' x-rays supported his conclusion.[13] Attorney Riccio explained that he chose not to pursue the issue of the gunshot wound because he wanted to avoid CT Page 4852 running the risk of Lane responding in a way that could only hurt the defense. He knew that Lane would have told the jury that he viewed the relevant x-rays and that on the first set of x-rays there was no bullet wound corresponding to the September 17, 1989, incident and that on the second set of x-rays there was a bullet wound corresponding to the September 17, 1989, incident. Such testimony from the examining physician, Riccio feared, would have negatively affected the defense. Id., 119.[14]
Attorney Riccio testified very clearly that even if he had had the x-rays at the time of the trial he would not have used them. Transcript II, pp. 119-120. Attorney Riccio further testified that what he would have done differently was not put on the alibi witnesses. Id., 120. According to Attorney Riccio: "What killed us in the Givens case [docket number 33,468] was the — was the alibi witness." Id., 114.
By his own admission, Attorney Riccio failed to obtain or review all of the available medical evidence in this case. This court need not decide, however, whether or not this amounts to deficient performance of trial counsel. "A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice." Nardini v.Manson, 207 Conn. 118, 124, 540 A.2d 69 (1988); see alsoValeriano v. Bronson, supra, 209 Conn. 75. Not only has the petitioner failed to establish that he suffered sufficient prejudice, he has failed to show that he suffered any prejudice at all.
A review of the trial testimony of Darryl Givens, Gwendolyn Givens and Lane, as well as a review testimony of Lane at the habeas hearing leads this court to find that Darryl Givens was in fact the victim of a gunshot wound on September 17, 1989. At the habeas hearing Lane affirmed his trial court testimony and testified extensively about Darryl Givens' injuries. His testimony was supported by the production of x-rays and CAT scan films. Transcript I; Petitioner's Exhibits 3, 4, 6, 7, 8, 9, and10. Lane testified that the CAT scan films corresponded with the x-rays and that both supported the conclusion that Darryl Givens had been the victim of a gunshot wound on September 17, 1989.Transcript I, pp. 7, 9, 11-12, 13-14, 20-23. The medical evidence presented was not exculpatory as the petitioner claims. Because CT Page 4853 the petitioner has failed to establish that he suffered any prejudice as a result of Attorney Riccio's failure to obtain the medical evidence, the petitioner has not met his burden under theStrickland test. The petitioner's third claim of ineffective assistance of counsel must fail.
For all of the foregoing reasons the petition is dismissed.
Zarella, J.